JOHN W. CRUETT, Garnishee of WILLIAM MACWILLIAMS *vs.* T. ROBERT JENKINS, and others, trading as JENKINS & CHANDLER.

*Attachment laid in the hands of the Maker of a Negotiable Promissory Note, as Garnishee of the Payee or Endorser.*

Where the maker of a negotiable promissory note is summoned as a garnishee of the payee or endorser, the plaintiff in the attachment is not entitled to a judgment of condemnation, if it appears that the note, either before or after the service of the attachment, has been transferred or endorsed over to a third person before its maturity for value, and without actual notice to him of the attachment.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiffs offered the following prayer :

If the jury find from the evidence offered that the promissory notes, or any of them, mentioned in the mortgage offered in evidence were in the hands of William Mac-Williams, as owner thereof, at or after the time when the attachment in this cause was laid in the hands of Cruett, the garnishee, that then the attachment was a lien, and bound whatever money was due upon said notes, or any other from Cruett, in the hands of Cruett, then the verdict shall be for the plaintiffs.

The garnishee prayed the Court to instruct the jury :

1. That if they find from the evidence that the notes in question were *bona fide* the property of William W. Jones on the day the attachment in this case was laid, then their verdict must be for the garnishee.

2. That if they find that the only indebtedness of the garnishee, Cruett, to the defendant, MacWilliams, is the indebtedness arising out of the promissory notes spoken of in the evidence, and that the said notes were all before maturity endorsed over by said MacWilliams to William W. Jones, *bona fide* and for value, and that at the time of his taking said notes said Jones had no notice of the attachment in this case, and that Jones has held and owned said notes from that time until the present, then their verdict must be for the garnishee.

Whereupon the Court (GAREY, J.,) rejected the plaintiff's prayer, and the garnishee's second prayer, and granted the garnishee's first prayer ; and the Court gave an instruction in lieu of the prayer of the plaintiff, which is as follows :

The jury is instructed that if they find the judgment in favor of the plaintiffs against William MacWilliams, given in evidence, and that in March, 1876, an attachment on said judgment issued out of this Court, and was laid in the hands of John W. Cruett as garnishee, and if they shall further find that at the time said attachment was laid in hands as aforesaid, the said Cruett was indebted to the said MacWilliams in a sum equal to the claim of the plaintiffs, and that if said indebtedness was evidenced by a negotiable promissory note or notes passed by said garnishee to said MacWilliams, and that, at the time said attachment was laid, said promissory note or notes were the property of said MacWilliams, and are now due and payable, then they should find for the plaintiffs.

To the giving of which instruction, and the rejection of the garnishee's second prayer, the garnishee excepted, and

the verdict and judgment being for the plaintiffs, the garnishee appealed.

The cause was argued, by agreement of counsel, before BARTOL, C. J., ALVEY and IRVING, J., and the decision was participated in by BRENT, GRASON, MILLER and ROBINSON, J.

*George E. Nelson* for the appellant.

Negotiable notes cannot be attached in the hands of the maker before maturity, after they are put in circulation. *Sheets vs. Culver,* 14 *La.,* 449; *Kimbal vs. Plant,* 14 *La.,* 511; *Gregory vs. Higgins,* 10 *Cal.,* 339; *McMillan vs. Richards,* 9 *Cal.,* 418; *Hutchins vs. Evans,* 13 *Vermt.,* 541; *Ludlow vs. Bingham,* 4 *Dallas,* 44; *Kieffer vs. Brown,* 18 *Penna. Stat.,* 388; *Hill vs. Kroft,* 29 *Ibid,* 186; *Drake on Attach.,* secs. 583, 590.

But, assuming that negotiable notes, while current, are attachable, yet the attachment is unavailing against a *bona fide* holder or endorsee for value to whom the notes have been transferred before maturity, without actual notice of the attachment. *Day vs. Zimmerman,* 68 *Penna. State,* 72; 28 *Grattan,* 1; *Durham vs. Pogue,* 20 *La. An.,* 195; *Cleneay, et al. vs. The Junction R. R. Co.,* 26 *Ind.,* 375; *King vs. Vance,* 46 *Ind.,* 246; *Davis, et al. vs. Pawlette,* 3 *Wis.,* 300; *Hubbard vs. Williams,* 1 *Minn.,* 54; *Enas vs. Tuttle,* 3 *Conn.,* 27; *Culver vs. Parish,* 21 *Conn.,* 412; *Huff vs. Mills, et al.,* 7 *Yerger,* 42; 9 *Ibid,* 112; *Mims, et al. vs. West,* 38 *Georgia,* 18; *Pannell, et al. vs. Phillips,* 55 *Ibid,* 615; 9 *Iredell,* 116; 11 *Ibid,* 564; 65 *N. C.,* 201; *Turner & Armstrong vs. Ogleby,* 9 *Ibid,* 412; *Moore vs. Green,* 4 *Humphrey,* 299; *Daniel vs. Rawlings, et al.,* 6 *Humph.,* 403; 3 *Smedes & Marshall,* 300; *Carson vs. Allen,* 2 *Chandler,* 123; 3 *Mo.,* 64; *Gaffney vs. Bradford,* 2 *Bailey,* 441; 6 *Nebraska,* 343; *Greer vs. Powell,* 1 *Bush,* 489; 2 *G. Greene,* 125; 3 *Texas,* 458; 21 *Ibid,* 501; 3 *Humphrey,* 448; *Littlefield vs. Hodge,* 6 *Mich.,* 326; *Hull vs. Blake,* 13 *Mass.,* 153.

*William C. Schley,* for the appellees.

The jury having found that there was an indebtedness existing from Cruett to MacWilliams *at the time the attachment was laid,* which was the period to which the Court in its instruction restricted the operation of the plaintiff's attachment, the only question of law which could arise in this case would be whether the jury should have also been instructed that the plaintiffs were not entitled to recover if they should find that the notes were passed away to Jones, *after* the attachment had been laid, *bona fide,* for value, and without notice of the said attachment on the part of said Jones. But there was *no evidence whatever* to go to the jury of any such state of case, the only testimony offered being that the notes had been passed away *before* the laying of the attachment. The second prayer was, therefore, properly rejected. *Keech vs. Balto. & Wash. R. R. Co.,* 17 *Md.,* 33.

It was for the jury to find whether, from all the testimony in the case, there was an indebtedness from the garnishee to the said MacWilliams, upon which the attachment took hold. Even, therefore, if the ruling of the Court was erroneous, yet no injury was inflicted upon the garnishee, because the jury had the right to render their verdict according to the facts. *Roloson vs. Carson,* 8 *Md.,* 209, 226.

But admitting, for the purpose of argument, that there had been evidence that all the notes had been passed away by MacWilliams, *bona fide,* for value, and to innocent holders, without notice of the existence of the attachment, after the attachment had been laid, yet such subsequent passing away of said notes could not defeat the plaintiff's attachment, unless the case of *Brown vs. Somerville,* 5 *Gill,* 419, 422, is to be now overruled. That case has been confirmed in 8 *Md.,* 444, 455, upon a second appeal, and also recognized on this point in *B. & O. R. R. Co. vs. Wheeler,* 18 *Md.,* 378. See also, *Palmer vs. Hook,*

1 *Lord Raymond,* 727; *Brooke vs. Smith,* 1 *Salk.,* 280; *Savage's Case,* 1 *Salk.,* 291; *Steuart vs. West,* 1 *H. & J.,* 536; *Dore vs. Dawson,* 6 *Alabama,* 713; *Huff vs. Mills,* 7 *Yerger,* 45; *Hull vs. Blake,* 13 *Mass.,* 155; *Chase vs. Haughton,* 16 *Verm.,* 597; *Coit vs. Hull, Kirby's Rep.,* 149.

The right to garnishee credits of the defendant in the hands of *any other person* is secured to the judgment creditor by the statute law of the State without qualification, and he cannot be deprived of this statutory right except by legislation. *See Art.* 10, *sec.* 30, *of the Code.*

BARTOL, C. J., delivered the opinion of the Court.

On the first day of March 1876, an attachment was issued on a judgment of the appellees against MacWilliams, which was laid in the hands of the appellant, garnishee, on the following day; the garnishee appeared by attorney and pleaded *nulla bona;* the trial took place in October 1878, and resulted in a verdict and judgment of condemnation in favor of the plaintiffs; from which this appeal has been taken.

It appeared in proof that on the 4th day of December 1875, the garnishee was indebted to MacWilliams in the sum of $13,000, for which the latter held his eight negotiable promissory notes payable in one, two, three and four years after date, and secured by a mortgage; eight thousand dollars of the notes had matured at the date of the trial, but none of them were due when the attachment was served. It appeared that the notes were endorsed by MacWilliams and delivered to W. W. Jones for value, before maturity, but whether before or after the attachment the evidence was conflicting; this question was however submitted to the jury, who determined that at the time the writ of attachment was served, MacWilliams, the payee, held the notes, sufficient in amount to satisfy the judgment of the appellees; and upon finding the facts before stated their verdict under the instruction of the Court was found for the plaintiffs.

The appellant's exception is to the granting of this instruction, and the refusal of his *second* prayer, which asserts the proposition, that if the promissory notes were all, before maturity, endorsed over by MacWilliams to Jones, *bona fide* and for value, when Jones had no notice of the attachment proceedings, and that he continued to hold the same, the verdict must be for the garnishee.

The question presented by the appeal is one of very great interest and importance. As succinctly stated in the appellant's brief, it is "whether the maker of a negotiable promissory note should be charged as the garnishee of the payee, under an attachment served before the maturity of the note, where before maturity, the note has been endorsed to a *bona fide* holder for value, without notice to him of the attachment."

Under the law merchant which prevails in this State, where the Statutes of 3rd and 4th Anne are in force, the *bona fide* endorsee for value of a negotiable promissory note, who takes it before maturity, is protected against all equitable defences which might exist between the original parties. It would seem to be inconsistent with reason, and contrary to public policy to hold that his rights may be defeated or impaired, by a proceeding to which he is not a party, instituted by a stranger against the maker of the note. The object of the attachment law is to subject the property and credits of the debtor to the payment of his debt; when laid in the hands of a garnishee, it binds whatever he may hold belonging to the debtor, and any money he may owe to and be liable to pay to the debtor; but when his liability exists in the form of a negotiable promissory note, which by the statute is transferable by endorsement, and passes from hand to hand, it cannot be asserted while the note is current and not mature, that the debt is due to the payee, it is by its terms payable, not to the payee, but to any one into whose hands the note may come by endorsement.

Cruett, Garn. *vs.* Jenkins & Chandler.

The difficulty of subjecting credits of that kind to the process of garnishment, is to be found not only in the nature and character of negotiable paper; but also in placing the garnishee in a worse condition than he otherwise would be, and subjecting him to the danger of having to pay the same debt twice over; for if a judgment of condemnation be recovered against him, its payment would not serve as a defence against a suit upon the note by a *bona fide* endorsee for value, who received it before maturity, without notice of the attachment. The rights of the endorsee could be in no manner affected by the attachment proceeding, to which he is not a party, and which as to him is *res inter alios*.

On the other hand, if it could be maintained that in such case, the judgment of condemnation and its payment by the garnishee, will protect him against the claim of the endorsee, which would be contrary to sound principles, such a doctrine would destroy the negotiability of all promissory notes, and interfere injuriously with the daily business and transactions of men dealing with commercial paper.

For these reasons, we are of opinion, the proposition asserted in the second prayer of the appellant is correct. This opinion is supported by the uniform and unbroken current of decisions in this country, wherever the Statutes of 3rd and 4th Anne are in force, and the law merchant as applicable to negotiable paper prevails. This is shown by a reference to the numerous authorities cited in the appellant's brief.

If necessary others might be cited. They will be found collected in *Drake on Attachment*, (4th *Edition*,) sec. 582 to 592 *inclusive*.

Two cases in Maryland have been cited by the appellees' counsel, as sustaining the opposite view. These are *Steuart vs. West*, 1 *H. & J.*, 536, and *Somerville vs. Brown*, 5 *Gill*, 399.

In *Steuart vs. West*, the debt of the garnishee to the defendant, was evidenced by a negotiable promissory note, and the attachment was supported. But it does not distinctly appear from the report of the case, that the note was in the hands of a *bona fide endorsee* for value, who received it before maturity. The case is very briefly reported. No opinion was given by the Court of Appeals showing the ground upon which their decision rested. We do not think the case can be considered as a distinct adjudication of the question now before us.

In *Somerville vs. Brown*, which appears to have been based to some extent, upon what was supposed to have been decided in *Steuart vs. West*, it was held by a majority of the Court, Judge DORSEY dissenting, that "where the maker of a negotiable promissory note, is before its maturity, summoned as a garnishee of one who then owns the note as an endorsee, and judgment is rendered against him, the judgment will protect him against an action on the note, brought by a subsequent endorsee, who acquired title to the paper before its maturity, and without any knowledge of the attachment."

Afterwards, when the same case came before the Court on appeal in *Brown vs. Somerville*, 8 *Md.*, 444, the Court did not consider the main question then open, as the decision on the former appeal, having been rendered in the same case, settled the principle governing the case. Nevertheless, the former decision was so far modified, as to hold that in such case, the judgment is not a defence, unless there has been execution thereon and satisfaction or payment.

The case in 8 *Md.* cannot be considered as an affirmance of the principle decided in 5 *Gill*, which stands unsupported by any other decision in this State.

In view of the well settled principles of the law, and the uniform current of decisions ·in other States, as well as upon grounds of public policy, we are constrained to

depart from the decision in 5 *Gill*, and to hold that where the maker of a negotiable promissory note is summoned as a garnishee of the payee or endorser, the plaintiff in the attachment is not entitled to a judgment of condemnation, if it appears that the note, either before or after the service of the attachment, has been transferred or endorsed over to a third person before its maturity for value, and without actual notice to him of the attachment.

We are of opinion the *second* prayer of the appellant in this case ought to have been granted, and that there was error in the Court's instruction to the jury; the judgment will therefore be reversed and a new trial ordered; but the appellant will not be awarded his costs on this appeal.

*Judgment reversed and*
*new trial ordered.*

(Decided 11th March, 1880.)